Good morning. Paul Marks for the appellant. Good morning. Is this situation okay for you here? Say again? Is this setup okay? Yes. Are you comfortable? I can manage. Okay. Thank you. I appreciate your accommodation. I know you've read the briefs, so you understand that the central issue in this case is whether a right to an annuity is the same thing as a right to income. within the meaning of Section 2036A1 of the Internal Revenue Code. And the answer to that seems obvious. An annuity, because an annuity is a fixed sum of money that's payable regardless of the presence or absence of income. Let me ask you this, just to kind of clarify in my own mind. So are you asserting that IRC Section 2036A1 is unambiguous, or must we consider the Treasury Department's interpretation of the statute under Chevron second step? So are you saying it's unambiguous? Well, I believe you just cited the section of the regulation as opposed to the code. You cited 20.2036C12, did you? That's the regulation. It's the code that we're trying to interpret here. And our position is the regulation is invalid insofar as it equates a right to an annuity with a right to income. Well, but is the code unambiguous? The code is unambiguous. Okay, but it doesn't use the word annuity, right? The code does not use the word annuity. Okay. So why is it unambiguous? The code is unambiguous. And under the Wisconsin Central Limited versus United States decision decided by the Supreme Court last year, a statute must be read literally and the words of the statute given their ordinary meaning at the time the statute was enacted. The word income is unambiguous, and it absolutely does not embrace an annuity. They're two completely different concepts. The terminology is important here because an annuity could be an instrument purchased from a third party or an insurance company, but it wasn't in this case. It's a mechanism that was created in this trust, and it was a mechanism to make payments of money to Mrs. Yoder. So Mrs. Yoder was transferring out of her estate a significant income-producing asset, an interest in a business, and in exchange, over a period of time, she was being essentially guaranteed she would receive a significant amount of money each year. So why is the terminology annuity or payment or dividend or rent or royalty or commission, why does any of that matter? That all seems to me to be money produced by the asset that is then going to the transferor during their lifetime. No question. It's money produced by the assets that's paid out to the taxpayer annually in a fixed sum. It's irrespective of whether those assets that represent the source of the payment produce any income at all. For example, it's quite commonplace to have so-called grantor-retained annuity trusts, which is what we're dealing with here, set up with non-income-producing assets. For example, Berkshire Hathaway stock, which I think you can take judicial notice of the fact, has never paid a dividend in its entire history and yet has appreciated substantially every year. Annuities, grantor-retained annuity trusts are set up with Berkshire Hathaway stock and at the expiration of the term, and the annuity is paid either with the proceeds of the sale of the stock within the trust or in kind by delivering back shares at the then value, which produces residual shares remaining in the trust at the end of the term, which are then delivered to the beneficiaries. So what would have happened, okay, that the decedent died, what, at 14 years and six months? Fourteen years, I think. Or something, some change. And eight months and nine months. So if the decedent had died after the 15 years and the annuity had stopped? We wouldn't be here. So what would happen, though, is something very significant and something very significant about this statute is that the decedent would have transferred a very significant asset out of her estate. Now, this asset was a half interest in a business that her husband had owned, that she had owned with her husband. Her husband passed away. She received the interest in the business with a stepped-up basis. She transfers it out of her estate for a sum of money to be paid over time. That is discounted to present value, and they pay a gift tax of roughly $180,000, which was minuscule in connection to what the estate tax would ultimately be. So they take the risk. They could have set this up for two years, three years, five years, ten years. They went long term. They said 15 years on a 65-year-old woman. And if they had succeeded, if she had outlived the grant, then the property would have transferred to her beneficiaries, and they would not pay estate tax or income tax, and they would receive the stepped-up basis. So it's a huge boon for the taxpayer, but there's also the risk. But there's also a risk, right? They know under the statute that if they die, well, they still have a – They would not have received a stepped-up basis. Okay, so they don't get the stepped-up basis, but they get her stepped-up basis, and they get it without paying the estate tax, and they don't pay the gift tax either. It's already been paid at a reduced amount of money. That's correct. That's exactly correct. They would have paid gift tax at the time the grant was set up on the then value of the remainder. And so the whole purpose of the statute is to address inter vivos transfers, where you take income-producing assets and you move them out of it from one person to another, to take them out of an estate so you can avoid estate tax. And so the statute applies the strings, possession, enjoyment, the right to the income, so that if you haven't really just given up the asset, if you still are holding on to it and getting the benefit from it, as one case says, present economic benefit, then you have to time it right. And the statute tells you what happens if you don't. If you're still alive when this ends, then it fails. If you've retained one of the statutory strings. And why isn't what you described as an annuity present economic benefit, which is how the case law has defined enjoyment of the property? Oh, the enjoyment is a strong man. There's absolutely no authority whatsoever that suggests. In fact, appellant has never before, I think if you check, ever raised the enjoyment argument with respect to a retained annuity. This is the first time that I think the argument is there. And, in fact, the government, were that the case? Were that the rule? For example, I refer you to the estate of Becklenburg, which is cited in the briefs, which the government lost and which they would have won if, in fact, a retained annuity was enjoyment. Isn't there some statement in the record of what the decedent thought would happen if she died before the 15 years? Yes. And what was that? She knew at that time. She knew that the IRS took the position that the statute covered annuities. That was their position. It was well known. And when she entered into the transaction, she understood that if she didn't survive the 15 years, we would have an argument. And here we are. So this wasn't something surprising. But what her understanding was doesn't mean that's what the rule is. No, I know. But anytime you look to things that the IRS's position about this was not taken for the purpose of litigation. It had been taken in. Oh, it's been a longstanding position. Yes. It was exacerbated in 1990 when Section 2702 was enacted, which for the first time enlightened the rule that you could set up grant or retained annuity trusts and, in fact, make a present transfer of the remainder interest and pay a gift tax. I'm going to do a hypothetical for you. I understand your position that the statute's unambiguous. But let's say we think, and I'm saying this hypothetically, let's say we decide it's ambiguous and then we have to go. It's not ambiguous. Well, I know. It's hypothetical. Hypothetical. I want to give you the chance to answer it. I'm sorry. Are you hypothetically that you decide the statute is ambiguous? Yes. And that we have to go into the Chevron analysis. And we lose. We lose. All right. Because. Okay. All right. I just want to understand. Absolutely. Okay. If you decide the statute is ambiguous, we lose. Even though Chevron, we keep hearing arguments that Chevron and our might be on life support. They're still on. Chevron requires a preliminary determination of ambiguity. Right. That's step one. And then at step two, you would have to show that it was arbitrary and capricious. I'd have to show that the regulation was unreasonable. And I can't. Look, I think what this boils down to. I just want to take it through every. What this boils down to, I think, and I think what your questions are getting to is the fact that it seems like a loophole for a retained annuity to not be covered by section 2036. It seems like it should be in terms of the legislative history and the purpose of the statute. And that very well may be true. But that was also true in Wisconsin Central. In Wisconsin Central Limited, which said the words were money remuneration, the key word money, and the remuneration was paid in the form of an in the money annuity, which could have been cashed in the next day for money. And the government made the same argument. They said, gee whiz, are you telling us that an in the money annuity, which can be cashed in the next day, is not money within the meaning of this statute? And Justice Gorsuch said that's exactly what I'm saying. Money has to be given. Statutes must be read literally. And money must be given its ordinary meaning at the time the statute was enacted. And money at that time meant currency. An option is not currency. And if there's a problem, go back to Congress. That's exactly what happened in Byron versus. So let's go to the question here. What is your best argument that the code is unambiguous? Exactly. So the language of the code, please, and why is it not ambiguous? Exactly. And to the extent it creates a loophole, that's for Congress. We're dealing with a separation of powers case here. And that's exactly what Gorsuch was dealing with in Wisconsin Central. It's what the Supreme Court was dealing with in Byron versus United States and in Gitlitz versus Commissioner. Those are so-called loophole cases cited in the briefs. In Byron and Gitlitz, the Treasury did exactly what they should have done to begin with. Isn't the 2009 regulation meant to kind of talk to the Supreme Court about what they were saying in their cases? I'm sorry? Well, the 2009 regulation. The regulation at issue here? Yes. Weren't they trying to scale back what the Supreme Court was saying? I'm not sure I understand. What they were saying was they were saying this is the result the statute should produce in terms of its legislative history and purpose, and we're going to promulgate a regulation that says that because we think that's what it should say, and maybe it should say. But we're dealing here not with what the statute should say. We're dealing with what the statute does say, and that's what Gorsuch said. I guess the problem is with either of you. I mean, they claim it's unambiguous, too. Say again? They claim the statute's unambiguous, too. And you claim it's unambiguous, but I don't see annuity anywhere in it. I claim it's unambiguous. What? We claim it's unambiguous. Well, and they do, too. But, I mean, they go to the fallback position. Well, if they claim it's unambiguous, how do they get the Chevron? Well, I think they're taking both positions. You only get the Chevron if you first find ambiguity. Right. And we contend there is absolutely no ambiguity. I understand that. Just like there was no ambiguity. Do you want to save any time for rebuttal? Yes, please. Okay. Thank you. Thanks. Good morning. May it please the Court, Nathaniel Pollack representing the United States. The government's position here is that this Court can answer this question or decide this case at Chevron Step 1. When a person retains the right to a payment of $302,000 that it derives solely from an item of property and the income produced by that property, then under an ordinary understanding of the words of the statute, that constitutes, that retention constitutes a retention of possession or enjoyment or the right to income from the property. I think that's just a common sense interpretation of the language. But as you understand, this is also a case that the regulation is clear and on point, and Mr. Marks, I think, concedes that the regulation is on point. But you think it's unambiguous, too. I do. I think that the statute – I guess when I rest my case from this standpoint, if you both think it's unambiguous but it comes to different conclusions, isn't it ambiguous then? Unless I say that could be one of them is right and one of them is wrong. Yes. I think that's correct. And I also think that this Court thinks it's unambiguous. In Wray, this Court decided a case before the regulation. The issue here was – So before we get to the regulation, I think we need to – first of all, good morning, Mr. Pollard. Good morning. Yes, it's very ironic that I'm before you again a couple weeks later. I don't know if you're following me around or I'm following you around. Yes. I was wondering the same thing. But quick question. Counsel tells us before we get to the regulation, we have to get to the code. He says the code is unambiguous, therefore you do not get to the regulation.  I think that this Court doesn't – Let's straighten that out. I think that the Court doesn't need to get to the regulation. I think it can decide it based on the statutory language alone. I think it's the statutory language speaks for itself. And I also think that this Court has interpreted this very, very portion of the statute in a quite similar circumstance in its decision in Wray. I actually think Wray is a – was a better argument for the taxpayer than the situation here. What the – Mr. Marks has said in distinguishing Wray is, well, no, Wray is a disguised grit where the income equaled the annuity. But I think the facts in Wray are that, as here, the trustee could invade principal if necessary to pay the annuity. So the same thing. The annuity could theoretically be paid out of income or principal in Wray, just as here, although in both Wray and here, it was, in fact, paid completely out of income. And then – Well, I'm understanding him to say – he mentions Wisconsin Central. Yes. That – and he said the Supreme Court's opinion adopted a plain language approach that supports his reading of the statute. How do you distinguish Wisconsin? Well, I think Wisconsin Central did – I mean, obviously, a different statute. I think Wisconsin Central stands for the proposition that where the statute is clear, then you don't get to the – then you – you know, you stop at step one. You don't get to the Chevron step two inquiry. We think it's – we think it's clear in our favor. If it's not clear, we think we also – you know, to the extent that it's not clear, we think it's – we don't think it's clear in his favor. We think it's, you know, as an alternative. Why don't you tell us why you think it's clear in your favor? Because under any ordinary definition of the term enjoyment, when you have – when you're paid $302,000 a year out of property, and it's – and that's, to be clear, that's enjoyment of the property in the trust. Is that income? It's out – he has – now, he has said, well, no, it's not a right to income because it could be paid out of the trust – out of the property itself. But either way, whether the – whether you get paid out of the property itself by disposition of a part of the property and payment out of the proceeds, or whether you're paid out of income from the property, under an ordinary meaning of the term enjoyment, that – that is enjoyment. And this Court's decision in Ray supports that. The Supreme Court's decision in Church's estate supports that amply. I think it's important to – to – But, Counsel – Go ahead. Counsel says that the operative word for us to consider is not enjoyment but income. Right. And that a distribution of the corpus of a trust is not income. I want to make this point really clear. Is he – is – just – is he wrong about that? He is wrong about that. And why? The statute says enjoyment or a right to income. The reason it says that is that when the statute initially was enacted in 1916, it said possession or enjoyment. There was no right to income language. The Supreme Court in 1930 decided May v. Heiner. And in that case, the Supreme Court, for the first time, in sort of an apple cart upsetting decision, decided, well, no, possession – transfer of the – the title, even where there's a life estate, is enough to – to satisfy the statute. Congress then added the clause that – that Mr. Marks focuses on here, possession – the right to income. Later on in Churches of State, the Supreme Court, interpreting the earlier language – and that's critical – interpreting only the possession or – or – the possession or enjoyment language, concluded that in getting the income from property placed in trust constitutes enjoyment. Specifically, the Court rejected an interpretation of the possession or enjoyment clause that would allow the transferor or the decedent to enjoy, quote, the fruits of his property during his life and direct its distribution during death – at death. I would submit that's exactly what's happening here. There's no question that the decedent here enjoyed the fruits of the property, the – the 50 percent interest in the – in the family company during her life and then directed its distribution to her heirs at death because – because this – the – the grant period was – was not outlived and so the statutory timeframe was – was triggered, the – the 2036A1 timeframe. Okay, so the Supreme Court has held that substantial present economic benefit from a property constitutes enjoyment. But it has not squarely addressed the rights of annuity, has it? I – that's correct that the Supreme Court has not squarely addressed the annuity circumstance.  I mean, this Court does note that the annuity is – is approximately the same as the income in Rea. But if you look at the – at the way that this Court describes that in Rea, in each case where it's saying, well, the – the – there's an approximate match between the amount of the annuity and the amount of income, it's talking – it says that's significant because the – the corpus is going to remain intact. So in – in Rea, this Court is – is, you know, considering an argument similar to the argument Mr. Marks makes about the footnote eight of Philadelphia fidelity, the Supreme Court's decision in Philadelphia fidelity. It's important to remember that that's a – that's an argument that the bona fide sale exception was met. I don't – I don't take Mr. Marks to be arguing that the bona fide sale exception is met here. But – but this Court in Rea rejected the argument for a number of reasons. One, because there was no personal obligation to pay the annuity, you know, assuming it couldn't be paid out of the assets in trust. Well, if the Supreme Court precedent is unambiguous as to whether an annuity is included, why then did you have to pass the – why did you have to do the regulation? Well, I think it's important to note that the regulations – so as we say – point out in our brief, in the earliest regulations that go along with the statute, in the 1916 regulations, there's an express statement that a new – a retained annuity constitutes the enjoyment of the income. The – the language is the transfer of the property reserves and annuity should be so much of the property necessary to produce the annuity should be included in the gross estate. That's in the 19 – 19 – sorry, from 1919 to 1924, that's in the regulations. It – it's – I don't know why that regulation dropped away. My speculation is that it happened around that same 1930 May versus Heiner time, and perhaps the – they thought that the – so for whatever reason, it dropped out. But – but the Treasury Department has never changed its interpretation of that. So I – it's – I think it's clear in the preamble to the final regulations that the Treasury understood itself to be simply stating expressly something that has always been – well, was previously stated expressly in regulations and has always been the interpretation of – of this statute that Treasury has understood. And the reg – the reg provides something else. I don't fully understand how this part works, but the reg applies a formula for how much of the property is not in the estate, and that's not in the statute. So the reg provides some overlay on the statute. That's right, and that was really – the primary purpose of the regulation was to do that formula. Now, of course, helpfully for this case, an objection was raised along the lines of the argument being made here to the express statement about the inclusion of annuities. And so the preamble to the regs says, no, you know, we understand the unambiguous language of the statute, particularly as interpreted by the Supreme Court in cases like churches of state, and then also our own regulatory history and the way that this statute is interpreted. Well, let me ask you a hypothetical. Okay, I'm not saying this. Sure. Because apparently my hypothetical wasn't – isn't well received. Okay, but hypothetically, if we were to reach the question of the decedent's continued exercise of managerial duties for the partnership interest, why shouldn't that be remanded, that issue, to the district court as the district court did not ever address that issue? I mean, we say in our brief in a footnote, I believe, that that's certainly within this court's prerogative to remand it to the district court. We think there's enough information in the record, although we certainly hope you don't reach that question because we think that, you know, at least we certainly hope you don't reach that question because you think the regulation needs to be invalidated. Well, I said a hypothetical. But, yes, we think that this court could certainly – it would be appropriate to remand it under this court's precedent. We also think there's enough evidence that sort of nothing changed about the control or the significant amount of control that the decedent exercised over these assets that that's a significant factor as well. One other case I would just direct this court's attention to, because I think it's very helpful, is the Third Circuit's decision in McNicol's estate. That's a case like here where there was not strictly a right to income because there was no – it was just an oral understanding. So there was no legally enforceable right to income. But the Third Circuit said, well, no, the right to income language that was added in the wake of May v. Heiner was not intended to contract the coverage of the statute, which is really the argument that Mr. Marks is making, but was intended to, if anything, expand the coverage of the statute. And a situation there where the individual, the decedent, got the income from the property placed in trust counts as possession, enjoyment, or the right to income from under the language of 2036A1. Well, there's no question here but that the income that flowed was adequate to meet the terms of the annuity, correct? Right. But does that matter in our interpretation of the statute or the code? I think it's – In other words, in a situation where you have a set law of a trust providing, as counsel demonstrates as an example, a case where the proceeds of the – excuse me, not the proceeds, but where the principle of the trust is being terms of the annuity, is that different from a case where the proceeds of – where the income from the trust is adequate to meet the terms? The regulation – Under the code. We submit that it's the same under the code, and the regulation clearly covers both cases. I would just say – Well, I'd like to not get to the regulation unless you want us to declare an ambiguity. No, I don't – I don't see how we get to the regulation. Right. Under the code, we think that use of the property itself clearly is enjoyment of the property. So in this example of non-income-producing stock, when you dispose of a portion of that stock to pay the annuity, that constitutes enjoyment of that property. That stock is available at present to satisfy the – to meet the obligations of the annuity and is actually used, in fact, to meet the obligations of the annuity. So that would constitute enjoyment. If I understand what you're saying, you're suggesting that the taxpayer's argument is that income, as understood in the statute, means a very specific definition of income to the trust. So they're drawing a distinction between the principal and then the income the property earns and whether the transferor had a right to actual income. And you're saying it doesn't matter if it's principal, if it's called principal or income or corpus or whatever you call it, if the transferor has a right to be getting money back from the property that's placed into the trust, that's income. It's income to the transferor. Is that correct? Yes. So I guess our principal position is whether you get paid out of – or whether you use a portion of the property itself, that's enjoyment of the property. In addition, here there was a right to income at the initial stage because if you look at the amount of the value of the property at the beginning of the grant period, there had to be some income produced to pay out the whole grant. If you had simply disposed of the property on day one, there wouldn't have been enough – and put the money under a mattress, there wouldn't have been enough money to pay out the grant. But, counsel, in your answer to my colleague, it seems to me that you are commingling the term distribution and income to mean the same thing. A distribution from a trust is not income in the ordinary income sense of the word. Sure. I agree that there's a distinction between those two. I just think here it's in fact true that all of the annuity payments were always made out of income. We think it doesn't matter whether they were made out of income or whether they were made out of the disposition of the property itself. I would just point to one thing that's responsive to your question, Your Honor, that the statute makes clear that we're not talking about principle of a trust or income of a trust. We're talking about income from the property, that is, the property placed in trust. And so there is this argument that, well, once the money that was left over after we paid the annuity was reinvested in the trust, that that was some different kind of property that could be used to pay the trust. And our position is, no, that's still income from the property. So just to be clear on that. And that's the whole point, right? Because not only do you transfer the income-producing asset out of your estate, if that asset grows in value, you transfer that as well. Correct. Right. What you have here is just one thing. It's the 50% interest in the company and the fruits of that. And that fruits language is right out of Church's estate. When you're enjoying the fruits of your property, then that's enjoyment for purposes of 2036A1. Thank you, Your Honors. Thank you. Okay. We went a little bit over, so I'll give you three minutes if you need it. Yes. The case of Wisconsin Central is squirrelly in point. Well, counsel, I think the way you constructed the argument, I compliment you on it. It's very creative. But Mr. Pollard tells us that it is not a fair characterization of the code or the argument to focus on the word income, but rather that the focus should be on the word enjoyment. And if you look at the word enjoyment, that is broad enough under traditional interpretation of the code of that word to suggest that a distribution of the trust, whether it comes from corpus or from income, from principle or interest, is not relevant, that any distribution is enjoyment. And the problem is that when one payment was made, was remaining prior to the date of death, that triggered the entire tax year. Well, I respectfully disagree, Your Honor. Well, please explain why. As I say, the government has never before argued that the retention of annuity constituted the retention of enjoyment. And they haven't argued that because it has no merit. Again, I point you to the estate of Beckenberg cited in the brief, which the government lost. They never raised the argument that the annuity there was enjoyment. And yet, according to Appelli, that would have been a winning argument. Why didn't they raise it? Because they knew it didn't have merit. The regulation doesn't even use the word enjoyment. The regulation substitutes the word use, which is a much clearer term than enjoyment. And so to say that the retention of annuity is the retention of the use of the assets is a stretch. Furthermore, the regulation itself doesn't say that the retention of an annuity is enjoyment. If you read it carefully, as I point out in my brief, and you pay attention to the disjunctive syntax, the Treasury Department itself in promulgating the regulation equated the right to annuity with income, not with enjoyment. Moreover, they provided in the regulation for a formula for determining what should be the value in the estate where there's a retention of an annuity. Now, if the retention of an annuity was the retention of use, there'd be no need for a formula because when a taxpayer retains use, the entire value of the assets comes back to the estate, not some formulaic value. So the very insertion of a formula in the regulation is further evidence that not even Treasury thinks that annuity constitutes enjoyment. And then finally, the reason that the commentator's suggestion that an exception should be made where principle is sufficient to pay the annuity and no income required, the fact that the Treasury rejected that suggestion on a policy ground, the policy being we shouldn't let the trustee determine the estate tax consequence by the trustee's investment policy, whether the trust invests in non-income producing or income producing. That's not good policy. Well, if the retention of annuity were enjoyment, that entire discussion would be irrelevant because enjoyment is indifferent to the mix of income and principle. If it's enjoyment, whether it's income, whether it's principle, is irrelevant. And then, as I say, you don't need a formula. So the regulation itself shows us that the enjoyment argument simply has no merit. So unless my colleagues have additional questions, I've allowed you. I'm sorry? Unless my colleagues have additional questions, I've allowed you significant extra time. Thank you for your intent. But thank you both for your helpful arguments in this case. We always appreciate it. Thank you. Judge Callahan, may I compliment both counsel for a very well presented case? This court will now be in recess until tomorrow morning at 9 o'clock.
judges: Lucero, Callahan, Bade